# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 15, 2010

No. 09-20261

Charles R. Fulbruge III
Clerk

EVANSTON INSURANCE COMPANY,

Plaintiff

v.

DILLARD DEPARTMENT STORES INC,

Defendant-Third Party Plaintiff-Appellee

v.

DAMON J. CHARGOIS, CLETUS P. ERNSTER, III,

Third Party Defendants – Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:03-CV-4888

Before REAVLEY, CLEMENT, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Damon Chargois and Cletus Ernster appeal the district court's judgment holding them personally liable to Dillard Department Stores, Inc. for a judgment

---

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20261

originally entered against their law firm partnership. For the following reasons, we affirm the judgment of the district court.

## FACTS AND PROCEEDINGS

Damon Chargois and Cletus Ernster formed a law partnership in 2002. They registered it as a limited liability partnership, known as Chargois & Ernster, L.L.P. (CELLP), with the State of Texas in 2002. CELLP prosecuted lawsuits against Dillard Department Stores, Inc. (Dillard's), alleging that Dillard's racially discriminated against its customers. In an attempt to solicit business, CELLP developed a website in June 2003 which included a link using the "Dillard's" name and logo. Clicking this link took visitors to dillardsalert.com, a separate website documenting acts of alleged racial profiling by the department stores.

On July 14, 2003, Dillard's sued CELLP in Texas state court for trademark infringement and various business torts. It sought damages and an injunction against CELLP's use of its trademark. On October 31, 2003, CELLP's professional liability insurer, Evanston Insurance Co., filed a declaratory judgment action in federal district court, seeking a declaration that its policy did not insure CELLP against Dillard's claims. On November 21, 2003, after voluntarily dismissing the state court lawsuit, Dillard's filed a cross-claim in the Evanston case against CELLP reasserting its allegations and adding federal cyberpiracy and trademark claims. On January 15, 2004, pursuant to the parties' agreement, the court dismissed Evanston's claims for declaratory relief. Dillard's third-party claims against CELLP were all that remained.

On February 9, 2004, while the litigation continued, Chargois and Ernster executed a separation agreement that provided for "dissolution" of the partnership on February 27, 2004. CELLP's registration as an LLP was not renewed and, on July 25, 2004, the registration expired under Texas law. Notwithstanding these facts, the defunct LLP remained a party to the Dillard's

2

litigation, and no party was substituted on its behalf. On November 2, 2004, the court entered a final judgment ordering "Chargois & Ernster, L.L.P." to pay Dillard's $143,500.

Dillard's attempt to collect on the judgment did not succeed.[1] On January 10, 2008, in the docket of the Evanston case, Dillard's filed a third-party complaint for a declaratory judgment against Chargois and Ernster in their individual capacities. Dillard's sought a declaration that the two were personally liable, jointly and severally, for the 2004 final judgment entered against CELLP. Both Chargois and Ernster were personally served with the third-party complaint, and each moved to dismiss. Dillard's then restyled its third-party complaint as a first amended complaint, which reasserted the allegations of personal liability against Chargois and Ernster (hereinafter, the "2008 action"). Dillard's filed a motion for summary judgment, to which both defendants responded with lengthy opposition briefs. The court granted judgment for Dillard's in the amount of $143,500 against Chargois and Ernster, jointly and severally, and each appealed.

## STANDARD OF REVIEW

"We review a district court's grant of summary judgment *de novo*." *Goodman v. Harris County*, 571 F.3d 388, 393 (5th Cir. 2009). "Summary judgment is appropriate 'if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

---

[1] On June 29, 2006, Cletus Ernster, acting individually, filed a lawsuit in Texas state court against Dillard's and its counsel. Ernster alleged that in seeking to collect its judgment, Dillard's had filed false public records which interfered with Ernster's ability to purchase real estate and commence a new law practice. Dillard's moved to enjoin proceedings in Ernster's state lawsuit, arguing that an injunction was necessary for the federal court to protect and effectuate its judgment. The district court granted Dillard's motion. Ernster appealed and this court summarily affirmed. *Evanston Ins. Co. v. Dillard Dep't Stores, Inc.*, 228 F. App'x 478 (5th Cir. 2007) (unpublished).

3

fact and that the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(c)).    "We consider the evidence in a light most favorable to . . . the non-movant, but [he] must point to evidence showing that there is a genuine fact issue for trial to survive summary judgment."  *Id.* (quotation omitted).

## DISCUSSION

Chargois and Ernster press four main arguments, two of which present issues of federal law and two of which present issues of Texas law.  We consider the contentions under federal law before turning to the state law issues.

**A.    Federal Law**

*(1)    Subject Matter Jurisdiction*

Appellants first contend that summary judgment in the 2008 action was improper because the district court lacked subject matter jurisdiction.  They argue that the court exceeded the bounds of its ancillary, or supplemental, jurisdiction.  *See generally Peacock v. Thomas*, 516 U.S. 349 (1996); *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).  This argument fails because it ignores diversity of citizenship as the primary basis for the district court's jurisdiction.  The parties to the 2008 action are citizens of different states and the amount-in-controversy exceeded $75,000; thus, the requirements of 28 U.S.C. § 1332 were plainly satisfied and the district court had subject matter jurisdiction.

*(2)    Due Process*

Appellants next argue that they were denied due process by the court's grant of summary judgment in Dillard's favor.  They argue that they did not participate in the original 2003 lawsuit involving CELLP and that the court's imposition of personal liability upon them in 2008 amounts to a denial of due process.

They rely on *Nelson v. Adams USA, Inc.* for the proposition that "'[t]he law, at its most fundamental, does not render judgment simply because a person might have been found liable had he been charged.'" 529 U.S. 460, 471 (2000) (quoting *Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1354 (Fed. Cir. 1999) (Newman, J., dissenting)). In *Nelson*, liability was imposed upon the individual shareholder of a defendant corporation at the same moment the pleadings were amended to add that shareholder as a defendant. *Id.* at 466. The shareholder had no "opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him," and was therefore deprived of due process. *Id.* at 463. Chargois and Ernster, on the other hand, had an opportunity to contest their personal liability for CELLP's judgment and, in fact, vigorously did so before a judgment was entered against them individually. The *Nelson* Court emphasized that "the right to contest on the merits [one's] personal liability . . . . is just what due process affords." *Id.* at 472. Because Chargois and Ernster had that opportunity (and, indeed, availed themselves of it), there was no due process deprivation.[2]

## B.  State Law

It is undisputed that CELLP was formed in 2002 and ceased to exist as a registered LLP on July 25, 2004. Therefore, the Texas Revised Partnership Act (TRPA) applies to this dispute. *See* TRPA § 11.03(c) (codified at TEX. REV. CIV.

---

[2] Ernster also argues that an interlocutory order of the district court was contrary to law. In 2008, the court ordered Ernster to deposit all proceeds from his cases against Dillard's into the court's registry. He argues that contingent fee contracts for legal services may not be assumed by another party. *See In re Tonry*, 724 F.2d 467, 469 (5th Cir. 1984). His argument overstates the scope of the district court's order; its terms did not require him to assign contingent fee contracts but only to deposit "all funds collected in those actions." Ernster fails to demonstrate error in the district court's order.

No. 09-20261

STAT. ANN. art. 6132b-11.03(c)).[3] Appellants advance two main arguments under state law.  First, they contend that Texas partnership law confers immunity upon them as individual partners, whether of an LLP or general partnership. Second, they contend that the statute of limitations bars Dillard's 2008 action to hold them personally liable for the judgment against CELLP.

*(1)    Immunity from Personal Liability*

a.    TRPA §§ 3.04 and 3.08

As a general matter, the TRPA imposes joint and several liability on individual partners for all debts and obligations of a partnership.  Section 3.04 of the TRPA provides:

> Except as provided by Section 3.07 or 3.08(a), all partners are liable jointly and severally for all debts and obligations of the partnership unless otherwise agreed by the claimant or provided by law.

TEX. REV. CIV. STAT. ANN. art. 6132b-3.04.  Under this provision, appellants are liable for the debts and obligations of CELLP unless one of the enumerated exceptions applies.  *See, e.g.*, ROBERT W. HAMILTON ET AL., 19 TEXAS PRACTICE § 8.5 (2d ed. 2009) ("In general, each partner is personally liable for all debts and obligations of the partnership.").  The first exception, § 3.07, concerns the liability of incoming partners and is not relevant in this case.

As for the second exception, TRPA § 3.08(a) limits liability for partners of registered LLPs.  It provides:

---

[3] Even though the TRPA expired January 1, 2010, it continues to apply here.  In 2003, the Texas legislature enacted the Texas Business Organizations Code (TBOC), which, effective January 1, 2006, governed domestic entities formed after that date.  *See* TEX. BUS. ORGS. CODE § 402.001(a)(1).  CELLP is not such an entity because it was formed in 2002 and, more important, no longer existed when the TBOC became effective.  Even if CELLP still existed and were now subject to the TBOC, the TBOC makes clear that prior law, such as the TRPA, would have applied to this dispute.  *See id.* § 402.006.

6

(a) Liability of Partner.   (1) Except as provided in Subsection (a)(2), a partner in a registered limited liability partnership is not individually liable, directly or indirectly, by contribution, indemnity, or otherwise, for debts and obligations of the partnership incurred while the partnership is a registered limited liability partnership.

(2)    A partner in a registered limited liability partnership is not individually liable, directly or indirectly, by contribution, indemnity, or otherwise, for debts and obligations of the partnership arising from errors, omissions, negligence, incompetence, or malfeasance committed while the partnership is a registered limited liability partnership and in the course of the partnership business by another partner or a representative of the partnership not working under the supervision or direction of the first partner unless the first partner:

> (A) was directly involved in the specific activity in which the errors, omissions, negligence, incompetence, or malfeasance were committed by the other partner or representative; or
>
> (B) had notice or knowledge of the errors, omissions, negligence, incompetence, or malfeasance by the other partner or representative at the time of occurrence and then failed to take reasonable steps to prevent or cure the errors, omissions, negligence, incompetence, or malfeasance.

No. 09-20261

TEX. REV. CIV. STAT. ANN. art. 6132b-3.08.[4]  Appellants argue that § 3.08(a)(1) insulates them from liability because CELLP's debt[5] was incurred when the infringing website was created in June 2003, at which time CELLP was still a registered limited liability partnership.  Dillard's, meanwhile, contends that the debt was incurred when the judgment was entered on November 2, 2004, at which time the erstwhile LLP had lost its liability-limiting attributes.[6]

In Texas, "[t]he meaning of a statute is a legal question," which is reviewed "*de novo* to ascertain and give effect to the Legislature's intent."  *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).  "Where text is clear, text is determinative of that intent."  *Id.*  "We must interpret a statute according to its terms, giving meaning to the language consistent with other provisions in the statute."  *Dallas County Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 874 (Tex. 2005).  "Only when [the legislature's] words are ambiguous do we resort to rules of construction or extrinsic aids."  *Entergy Gulf States*, 282 S.W.3d at 437 (quotation omitted).

---

[4] We note that § 3.08 was amended in 1997 to add subsection (a)(1), including the key reference to when a debt or obligation is "incurred."  *See* 1997 Tex. Sess. Law Serv. Ch. 375, § 113.  The amendment moved the content of former subsection (a)(1) to subsection (a)(2).  In light of this change, the Texas Bar Committee's 1993 comment, which might appear to support a construction contrary to that adopted here, *see* TEX. REV. CIV. STAT. ANN. art. 6132b-3.08 bar committee's 1993 cmt. ("Subsection (a)(1) clarifies that the partnership must be a registered limited liability partnership at the time of the errors and omissions for which partner liability is limited."), no longer refers to the correct subsection.

[5] The parties characterize the 2004 judgment against CELLP as a "debt" rather than an "obligation."  We assume, without deciding, that this characterization is correct.

[6] Dillard's does not argue that personal liability should be imposed pursuant to the exception to liability protection contained in § 3.08(a)(2).  Neither Chargois nor Ernster argues that he cannot be held liable because the LLP's debt arose from the malfeasance of the other partner.

No. 09-20261

Although the terms "debt" and "incurred" are not defined by the TRPA, a plain reading of the statute's text supports Dillard's proffered interpretation. Neither partner was necessarily aware in June 2003 that displaying the Dillard's mark on the law firm website would ultimately lead to a partnership debt. The underlying conduct gave rise to the *possibility* of a future debt, but to say that a debt was "incurred" at that time unrealistically distorts the meaning of the word. After all, CELLP's conduct may have gone undetected, it may have been adjudged perfectly innocent, or Dillard's may have opted not to sue. Under any of those scenarios, no debt would ever have been incurred, let alone incurred in June 2003. It was only when the district court entered judgment against CELLP in November 2004 that a payable debt came into existence. It was then that CELLP incurred the debt within the meaning of the provision.

Moreover, the neighboring language of § 3.08(a)(2) demonstrates that the Texas legislature, when it so chooses, is capable of drafting a provision that focuses on the commission of events that lead to liability, rather than the fixing of consequent liability from those events. In that provision, the legislature insulated an LLP partner from personal liability "arising from errors, omissions, negligence, incompetence, or malfeasance *committed*" by another partner "while the partnership is a registered limited liability partnership." TRPA § 3.08(a)(2) (emphasis added). Thus, to decide whether the first partner's liability is limited for the second partner's malfeasance under §3.08(a)(2), a court must look to when the second partner committed the malfeasance. Had the legislature intended to enact the same "when committed" approach for § 3.08(a)(1), it could have used the language from § 3.08(a)(2). *See* 2A NORMAN J. SINGER ET AL., SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 46:6 ("[W]hen the legislature uses certain language in one part of the statute and different

9

language in another, the court assumes different meanings were intended.").[7] It chose, however, to use different language, and created a regime in which partners could be held individually liable for debts and obligations incurred when the partnership was not a registered LLP [§ 3.08(a)(1)], but in which partners would not bear liability for one another's independent malfeasance committed while the LLP existed [§ 3.08(a)(2)].

Because CELLP's registration had expired, it was not a valid registered LLP at the time its debt was incurred. Therefore, § 3.08 does not foreclose individual liability and § 3.04's default rule operates to hold appellants personally liable for CELLP's debt.[8]

b.    TRPA § 3.05

Appellants further argue that in addition to suing CELLP in 2003, Dillard's was required to sue the partners themselves on the trademark and tort claims in order to later hold them individually liable. They rely on TRPA § 3.05(c), which provides:

> A judgment against a partnership is not by itself a judgment against a partner, but a judgment may be entered against a partner who has been served with process in a suit against the partnership.

---

[7] The statutory test is not ambiguous. Our reference to a rule of construction, *see Entergy Gulf States*, 282 S.W.3d at 437, demonstrates that, even if it were, our conclusion would not differ.

[8] The district court did not expressly rely on § 3.08(a) to support its judgment. Instead its finding of personal liability was based on a conclusion that Chargois and Ernster continued doing business under the law firm's name rather than wind up the partnership, and that, in so doing, they "essentially ratified the firm's debts." Because a summary judgment may be affirmed on any ground supported by the record, *see McIntosh v. Partridge*, 540 F.3d 315, 326 (5th Cir. 2008), we need not assess this alternative disposition.

TEX. REV. CIV. STAT. ANN. art. 6132b-3.05. This provision is unhelpful to appellants, however, because Dillard's does not rely on the 2004 judgment against the LLP "by itself" to support their individual liability. Instead, it relies on the 2008 judgment it obtained against them individually.

Appellants' reliance on *Kao Holdings, L.P. v. Young* is also unavailing. 261 S.W.3d 60 (Tex. 2008). Construing § 3.05(c), the Texas Supreme Court held that

> its purpose appears to be to make clear that while partners are generally liable for the partnership's obligations, a judgment against the partnership is not automatically a judgment against the partner, and that judgment cannot be rendered against a partner who has not been served merely because judgment has been rendered against the partnership.

*Id.* at 64 (footnote omitted). Here, the record belies any argument that judgment against the partners was entered "automatically"; instead, Chargois and Ernster were defendants in a different action that they lost after defending their individual interests vigorously on the merits.

*Cothrum Drilling Co. v. Partee*, cited by appellants, is also distinguishable. 790 S.W.2d 796 (Tex. App. 1990). In *Cothrum Drilling*, a Texas intermediate appellate court held that judgment could not be entered against those partners "who were not served with citation before the statute of limitations had run." *Id.* at 800. That case involved the potential liability of individual partners—alongside their partnership—for the tort of conversion. It did not, like this case, involve a separate lawsuit seeking to enforce a preexisting judgment by holding individual partners liable for the partnership's debt.

*(2)    Statute of Limitations*

Finally, appellants assert that Dillard's 2008 action is barred by the statute of limitations. The inquiry depends on the nature of Dillard's cause of

action.  Dillard's contends that the cause of action is one for debt, that is, to enforce the 2004 judgment against the partners on the basis of their statutorily compelled individual liability.  Appellants, meanwhile, argue that the causes of action are for tort and trademark infringement; appellants view the 2008 claims as identical to those contained in Dillard's 2003 cross-claim against CELLP.

Dillard's amended complaint does not contain any allegations of individual wrongdoing, nor does it identify the individual conduct of either appellant as a basis for personal liability.  If, counterfactually, Dillard's were suing appellants for personal wrongdoing in June 2003—the same conduct for which it sued CELLP—then its cause of action would have accrued at that time and the tort or trademark limitations period would apply.  Instead, Dillard's seeks to impose liability on Chargois and Ernster for partnership debt by operation of Texas law.

In Texas, a person must bring a suit for debt "not later than four years after the day the cause of action accrues."  TEX. CIV. PRAC. & REMEDIES CODE ANN. § 16.004(a)(3).  The cause of action accrued, at the earliest, upon entry of judgment against CELLP on November 2, 2004.  Because Dillard's filed its third-party complaint (which was eventually replaced by its amended complaint) on January 10, 2008, its action fell within this four-year limitations period and is not time-barred.

Relevant case law also supports our conclusion.  *In re Jones*, decided prior to the TRPA's enactment, is on point.  161 B.R. 180 (Bankr. N.D. Tex. 1993).  In that case, a trustee obtained a final judgment against a partnership but could not recover fully from it.  The trustee then brought a separate action "against the partners to collect the remainder of the judgment."  *Id.* at 183.  The court held that the limitations period "began to run against the partners only when the district court's judgment became final," and that § 16.004(a)(3)'s four-year limitations period applied.  *Id.*  The court reasoned:

No. 09-20261

> Under the entity theory of partnerships, it is logical that a partner has no liability until the partnership liability is established.  There is nothing wrong in allowing the partners to be sued along with the partnership so that once the partnership liability is established, a judgment can be rendered against the partnership and the partners. On the other hand, there is nothing wrong with the partnership being sued and, if its liability is established, a subsequent suit being filed against the partners *on their personal liability for the partnership's obligation*.
> . . .
> Once the liability of the partnership became fixed, the only issue remaining was whether the Defendants are partners of [the partnership].

*Id*. at 183-84 (emphasis added).  The *Jones* situation is nearly identical to this case: rather than litigate the partners' liability for the conduct that gave rise to the debt, the trustee sought to enforce the partnership judgment against them simply by virtue of their status as partners.[9]

---

[9] In an effort to contest the relevance of *Jones*, appellants cite *Sunseri v. Proctor*, which required a claimant to sue individual partners within the limitations period for the underlying wrong.  487 F. Supp. 2d 905, 908 (E.D. Mich. 2007), *aff'd*, 286 F. App'x 930 (6th Cir. 2008) (unpublished).  The *Sunseri* court stated:

> Where, as here, a plaintiff obtains a judgment against the partnership as an entity, but fails to obtain a binding judgment against a partner's individual assets, and consequently cannot enforce that judgment against the partner, the plaintiff must sue the partner based on the underlying misconduct. While the plaintiff may use collateral estoppel to prevent the partner from relitigating the issue of liability, the plaintiff must still bring suit within the applicable limitations period for the underlying wrong.

*Id*.  The *Sunseri* case involved an attempt to enforce a New York judgment in a Michigan court and "look[ed] to Michigan's statutes of limitations regardless of

13

No. 09-20261

Dillard's debt action to hold Chargois and Ernster personally liable for the debt of CELLP was not barred by the applicable statute of limitations.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

what state's partnership law applies to the substantive issues remaining in this suit." *Id.* at 909. *Jones*, on the other hand, construes §16.004, the applicable Texas statute of limitations, and the predecessor to TRPA § 3.04. In light of *Jones*'s close similarity to this case, we incorporate its reasoning in favor of that of a nonbinding district court decision from a sister circuit.

Meanwhile, *Valley National Bank of Arizona v. A.E. Rouse & Co.*, cited by appellants, actually undermines their argument. 121 F.3d 1332 (9th Cir. 1997) (applying Arizona law). There, the Ninth Circuit recognized the viability of a debt action against an individual partner where a judgment had already been entered against the partnership. *Id.* at 1338.